## GRIEVE v. GRIEVE ET AL.

CONTRACTS — MUTUAL MISTAKE — REFORMATION — NEGLIGENCE OF A PARTY.

1. The presumption is that a written contract contains the final agreement between the parties and expresses their real intent, and, when a mistake therein is claimed, the burden rests upon the party so claiming to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement actually entered into, that there is a material mistake therein, that such mistake is mutual, and that it did not occur by, or result from, the negligence of the party claiming it.

2. A court of equity will not by reforming a written contract relieve a party claiming a mistake in its terms, where the mistake, if any, is shown to have occurred through the neglect or inattention of the complaining party in failing to read the contract when made, and it does not appear that he was misled in any way as to its contents.

[Decided April 15, 1907.]                    (89 Pac., 569.)

ERROR to the District Court, Natrona County, HON. CHARLES E. CARPENTER, Judge.

Action for the reformation of a written contract and its enforcement according to the agreement claimed to have been actually entered into. The material facts are stated in the opinion.

*Fred D. Hammond,* for plaintiff in error.

The defendants in error do not claim that the plaintiff in error was guilty of fraud, or that there was any trust relationship existing between them at the time of making the contract, neither do they claim that the mistake was the mistake of one side, but they claim that the mistake was mutual. This was the theory upon which the case was tried. There is an abundance of authority as to the right of a court of equity to reform a written contract in case of a mutual mistake clearly established; but no authority permitting such reformation on the verbal testimony of one of

the parties, and thus to make a new contract for all the parties. The mistake, to authorize reformation, must be mutual, and proven by clear, satisfactory and conclusive evidence. (Henderson v. Stokes (N. J.), 8 Atl., 718; Fehlberg v. Cosine (R. I.), 13 Atl., 110; Sparl v. Ins. Co., 19 Fed., 14; Rawson v. Lyon, 23 Fed., 107; Cummins v. Monteith (Ia.), 16 N. W., 591; Watchendorf v. Lancaster (Ia.), 14 N. W., 316; 16 N. W., 533; Fritzler v. Robinson (Ia.), 31 N. W., 61; House v. Austin (Ida.), 10 Pac., 37; Bodwell v. Heaton (Kan.), 18 Pac., 901; Ahlborn v. Wolf (Pa.), 11 Atl., 799; Fritz v. Fritz, 102 N. W., 706; Ford v. Joyce, 78 N. Y., 618; 66 Md., 552; 5 L. R. A., 159, note; King v. Holbrook, 63 Pac., 654; Bank v. Berton, 53 Pac., 216.) Equity will not relieve against mistake, if the party could by reasonable diligence have ascertained the real facts, nor where the means of information are open to both parties, and no confidence is reposed. (2 Pom. Eq. Jur., 856; 2 Estee's Pl., 2801; 2 Story's Eq. Jur., 22, 190.) Affixing a signature to a contract is a conclusive presumption, except as against fraud, that the signer read, understood and assented to its terms. (Crim v. Crim, 162 Mo., 544; Fivey v. R. R. Co., 67 N. J. L., 627; In re Greenfield's Est., 14 Pa. St., 491; Van Deventer v. Van Deventer, 46 N. J. L., 460; Upton v. Tribilcock, 91 U. S., 45; Vickers v. R. R. Co., 71 Fed., 139; Wallace v. R. R. Co., 67 Ia., 547; Chu Pawn v. Irvin, 31 N. Y. Supp., 724; Fonseca v. Cunard, 25 Am. St., 660; Ins. Co. v. Wharton, 59 Am. St., 129.)

The evidence as to the precise terms of the agreement as claimed by defendants in error is very slight and inconclusive. It rests upon the testimony of one only of the parties, and is contradicted by plaintiff in error. The contract is not unconscionable.

*John W. Lacey* and *John M. Hench,* for defendants in error.

The contract as written was unconscionable, judged by its results, and the custom of the business. The mutual

mistake to justify the reformation of a contract may be proved by parol evidence, and the proof is not required to be so strong as to remove all reasonable doubt. (Southard v. Curley, 134 N. Y., 148; Warrick v. Smith, 36 Ill. App., 619; Leitensdorfer v. Delphy, 15 Mo., 160; Bldg. Asso. v. Assur. Co. (Neb.), 102 N. W:, 246; Mikiska v. Mikiska (Minn.), 95 N. W., 910; Kammermeyer v. Hilz (Wis.), 92 N. W., 1107; Topping v. Jennette (Neb.), 90 N. W., 911; Bank v. Taylor, 76 N. Y. Supp., 790; Merchant v. Pielke (N. D.), 82 N. W., 878; Miller v. Morris (Ala.), 27 So., 401; Johnson v. Crutcher, 48 Ala., 368; Tyson v. Chestnut, 100 Ala., 571; Smith v. Allen, 102 Ala., 406; Campbell v. Hatchett, 55 Ala., 549; Turner v. Kelly, 70 Ala., 85; Littlejohn v. Creamery Co. (S. D.), 85 N. W., 588; Jenner v. Brooks (Conn.), 59 Atl., 508; 1 Story's Eq. Jur. (13th Ed.), 153; Meyer v. Lathrop, 73 N. Y., 315; Smith v. Jordan, 13 Minn., 264; Fish v. Ball (W. Va.), 12 S. E., 856; Dietz v. Ins. Co., 8 id., 616; 2 Pom. Eq. Jur., 862; Sampson v. Mudge, 13 Fed., 260; Ivinson v. Hutton, 98 U. S., 79; Goff v. Jones (Tex.), 8 S. W., 525; Kitchens v. Usry (Ga.), 48 S. E., 945; Nutall v. Nutall (Ky.), 82 S. W., 377; Scraper Co. v. Stickelman (Ia.), 98 N. W., 139.; Jones v. Warren (N. C.), 46 S. E., 740; Forester v. Van Auken (N. D.), 96 N. W., 301; Goode v. Riley, 153 Mass., 585.)

The court here sits solely as a court of review, and, though the case may involve equitable jurisdiction, the evidence is not to be looked at as upon a trial *de novo,* but the rule applies that the weight of evidence will not be considered where it is conflicting. Manifest error must be shown, and an affirmance will result unless it appears that the decision upon the facts is clearly wrong. (Horn v. State, 12 Wyo., 80; Bank v. Coal Co. (Pa.), 59 Atl., 484; Herlihy v. Coney (Me.), 59 Atl., 952; Evans v. Woodsworth (Ill.), 72 N. E., 1082; Spacy v. Ritter (Ill.), 73 N. E., 447; Robertson v. Moore (Ida.), 77 Pac., 218; Gordon v. Richardson (Mass.), 70 N. E. 1027; Dickinson v. Todd,

172 Mass., 183; Lurie v. Sabath (Ill.), 70 N. E., 323; Heyman v. Heyman (Ill.), 71 N. E., 591; Wolfe v. Bank (W. Va.), 47 S. E., 243; Murphy v. Da Foe (S. D.), 99 N. W., 86; Jayne v. Anway, 81 N. Y. Supp., 821 (71 N. E., 1132); Willey v. Clements (Cal.), 79 Pac., 850; Board v. Irvine, 126 Fed., 689; Travelers, &c., v. McAdam, 125 Fed., 358; Ginn v. Cannon (Ga.), 46 S. E., 631.) These authorities are all cases of appeal, and not proceedings in error. In this state there is no longer an appeal to this court. Every case comes up on error, and distinctions between actions at law and equity are abolished; the rule stated is, therefore, plainly controlling. (Clayton v. Freet, 10 O. St., 544; Kimball Co. v. Payne, 9 Wyo., 441; Conway v. Merc. Co., 6 Wyo., 468.) The evidence sufficiently establishes the mistake. The one party testified to a conversation wherein the plaintiff in error conceded the mistake. The latter merely denies that a conversation about the matter occurred. It is, therefore, a case where one party remembered the facts, and the other did not. The parties here are relatives, and the defendants in error relied upon the honesty of the other party, and his promise to correct the mistake in the contract.

*Fred D. Hammond,* for plaintiff in error, in a reply brief, cited the following authorities upon the question of the result of the lack of diligence of defendants in error in examining the contract before signing. (Con v. Hagan, 55 S. W., 325; Chatham v. Jones, 7 S. W., 600; Taylor v. Fleckenstein, 30 Fed., 99; Bowers v. Thomas, 22 N. W., 710; Brooks v. Mathews, 3 S. E., 627; Warden v. Reser, 16 Pac., 60; Wilson v. Moriarty, 26 Pac., 85; Glenn v. Statler, 42 Ia., 107; Snyder v. Ives, 42 Ia., 157; Johnson v. Donivan, 17 Ill. App., 59; Kennerty v. P. Co., 55 Am., 669; McCormick v. Molburg, 43 Ia., 56.) And the following as to denial of reformation upon conflicting evidence. (Goeke v. Rodgers, 86 S. W., 837; Coleman v. Ins. Co., 82 S. W., 616; McGuigen v. Gaines, 77 S. W., 52.) It

was also contended that the code does not contemplate the joinder of actions equitable in nature with actions in tort, citing Thompson v. Bank, 61 How. Pr., 163; and that the question can be raised under the objection that the petition does not state facts sufficient to constitute a cause of action, citing Paddock v. Somes, 10 L. R. A., 254.

BEARD, JUSTICE.

The defendants in error (hereinafter called defendants) brought this action in the District Court of Natrona County against the plaintiff in error (hereinafter called plaintiff) for the reformation of a written contract; for the enforcement of said contract as the defendants claim it actually was and should have been expressed in the writing; and for an accounting under the contract.

The contract was for the leasing of certain sheep, on shares, by the plaintiff to the defendants, and was for the term of three years, commencing October 28, 1899. Among other things, the contract provided that the plaintiff was to have all the wether lambs during the term of the lease, and the defendants were to return to the plaintiff at the expiration of the lease the same number of ewes as they received at the commencement of the lease. The contract then provides: "After fulfillment and at the expiration of this lease, all the increase of ewes and ewe lambs are to be divided equally between the parties of the second part and first part, one-half to each party." It is alleged by the defendants that the contract as actually made between the parties was, that they were to have all of the ewe increase instead of one-half of the same, as it is written in the contract; and that, by the mutual mistake of the parties, it was made to read that the defendants were to have one-half instead of all of the ewe increase. The plaintiff in his answer denied that any mistake was made in reducing the contract to writing, and alleges that the contract was properly and correctly reduced to writing and that said written agreement was the actual and only agreement existing between the parties.

The cause was tried to the court without a jury, and the court found generally in favor of the defendants, and also found "that the written contract as alleged and set forth in plaintiff's petition does not express the contract entered into between the said respective parties thereto, and that a mistake was made in reducing said contract to writing, and that said contract should be reformed and corrected so that the actual contract that was entered into and intended to be entered into by the said parties can be enforced by the court. That the language of said contract so reduced to writing and signed by the respective parties, which partly reads as follows: 'After fulfillment and at the expiration of this lease, all the increase of ewes and ewe lambs are to be divided equally between the parties of the second part and first part, one-half to each party,' should be reformed and made to read as follows: 'After fulfillment and at the expiration of this lease, all the ewe increase of ewes and ewe lambs shall be given and apportioned to the said parties of the second part.'" A decree was entered reforming the contract accordingly, and judgment rendered in favor of defendants and against plaintiff for $7,392.50 and costs, and he brings error.

It is contended by counsel for plaintiff that the findings and judgment are not sustained by the evidence; that the evidence is insufficient to sustain the finding of the court that there was a mistake in reducing the contract to writing; and that the defendants were guilty of such negligence as would preclude them from relief in equity.

The facts, as shown by the record, up to and including the date of the execution of the written contract were: that the plaintiff, and John T. Grieve, one of the defendants, about September 1, 1899, talked over and agreed upon the terms of the contract—the other defendant, James B. Grieve, not being present. The sheep were delivered by plaintiff to the defendants about October 28, 1899, and the written agreement was signed about November 11, 1899, but was dated October 28. The contract was written by one

Grant, but how or from whom he received his instructions as to the terms and conditions to be inserted in the written contract does not appear. John T. testified to no other conversation with the plaintiff than the one above stated, prior to or at the time of the signing of the contract. He stated that he read the first part of the contract, but did not read the part in dispute; that he did not understand that part of it. Elsewhere in his testimony he stated that at the time he signed the contract it was not as it is now. He was not permitted by the court, and properly so under the pleadings, to state in what particular it was different. He also states that this paragraph of the contract was not in accordance with the conversation had with plaintiff in September. James B. testified that he had no conversation with plaintiff before the contract was signed, nor did he state that he did have at that time. He did not state whether or not he read the contract at the time he signed it, or that he in any way learned or attempted to learn what it contained. On the other hand, the plaintiff testified that this part of the contract was written by the same person who wrote the other parts, and before it was signed; and was agreed to by the three parties who signed it. The above is, in brief, all of the evidence we have been able to find in the record in relation to the conversations and negotiations between the parties prior to and at the time of the signing of the contract, and in relation to the circumstances attending its execution. There is no claim made that there was any. fraud or misrepresentations on the part of the plaintiff as to the contents of the writing, or that the defendants were in any way hindered or prevented from ascertaining and knowing what terms the writing contained before they signed it. There is no claim made that either of the parties understood the language used in the contract to relate to anything but the ewe increase; and the only mistake claimed by defendants is, that they were to have all instead of one-half of such increase; and a reformation of the contract is sought solely on the ground of the alleged mistake

in that respect in reducing the contract to writing. Courts of equity will reform written contracts upon the ground of mistake, but not in all cases. When parties have reduced their contracts to writing the writing is presumed to contain the final agreement arrived at between them and to express their real intent. And when a mistake in the writing is claimed by a party, the burden rests upon him to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement actually entered into by the parties; that there is a mistake in it as to a material fact; that the mistake is mutual; and that it did not occur by, or result from, the negligence of the party claming it. Judge Storey states the rule as follows: "It is not, however, sufficient in all cases, to give the party relief, that the fact is material; but it must be such as he could not by reasonable diligence get knowledge of, when he was put upon inquiry. For if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him; since that would be to encourage culpable negligence." (1 Storey's Eq. Jur., Sec. 146.) The Supreme Court of Indiana states the rule thus: "Courts of equity will relieve parties from the effects of mistakes in some cases, but not in every case. Thus in Wood v. Patterson, 4 Md. Ch., 335, the Chancellor said: 'It is not, however, in every case of mistake, even of a material fact, that the court will grant relief, for if the mistake is the result of the parties' carelessness or inattention, the court will not interfere in his behalf, its policy being to administer relief to the vigilant and to put all parties upon the exercise of a reasonable degree of diligence.' This may be regarded, we think, as the settled, equitable doctrine in reference to the correction of alleged mistakes." (Citing authorities.) (Toops v. Snyder et al., 70 Ind., p. 560.) In Haggerty v. McCanna, 25 N. J. Eq., 48, it was said by the Chancellor: "This case is one of great hardship. The improvements are proved to be of the present value of more than $2,000. * * * The result of the suit at law must be to

deprive the complainant of his entire property. He invokes the aid of this court to prevent so flagrant a wrong. He bases his claim to relief on the ground of mistake. But an error which is the result of inexcusable negligence is not a mistake from the consequences of which equity will grant relief." Again, "Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. The party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person." (Grimes v. Sanders, 93 U. S., 55.) "Against mistake due to negligent conduct the court will not relieve." (Pope v. Hoopes, 90 Fed., 451.) And in Montgomery v. City Council of Charleston, 99 Fed., 825, it is held that courts of equity will grant relief only when the mistake is mutual, material, and not caused by the negligence of the party seeking relief. (See also 20 Enc. Law (2d Ed.), 831, and 14 Pl. & Pr., 39, and cases cited in notes.) This rule is a just one and imposes no unreasonable duty. It simply requires that reasonable diligence shall be exercised by parties entering into written contracts to see to it that the writing expresses the true agreement; and they should not be heard in a court of equity to complain of injury resulting from their own inattention or neglect. The effect of a different rule would be to destroy in a large measure the value of written instruments as evidence, to encourage negligence, and to open the door for the substitution of parol for written evidence under the claim of mistake.

We think the evidence in this case not only fails to show reasonable diligence on the part of the defendants, but, on the contrary, shows an entire lack of care. Neither of them claim to have read that part of the contract claimed by them to be erroneous, or to have been misled in any way as to its contents. The mistake, if any, was one which the most ordinary care would have guarded against. Under such circumstances a court of equity will not relieve the parties, but will leave them in the situation in which they have placed themselves by their own negligence.

The court found that there was a mistake in the written contract; and on that question the evidence was conflicting. There is no direct evidence in the record as to what the agreement between plaintiff and John T. Grieve, one of the defendants, was. We refer to the agreement made about September 1, 1899, which appears to be the contract under which the sheep were delivered on October 28, and was the contract that the parties afterward undertook to reduce to writing. This lack of direct evidence may have arisen from the fact that the court refused to permit the defendant, John T. Grieve, to state what the conversation between himself and the plaintiff was, after he had testified to having had a conversation in which the matter was talked over and an agreement entered into. In the testimony of defendants we find such expression as, that the contract as written was not in accordance with the conversation and agreement made in September; that defendants should have had all of the ewe increase, etc. Their evidence on this branch of the case was mainly directed to proof of a conversation between the parties about a month after the contract was written in which it was claimed that plaintiff admitted that there was a mistake in the written contract in respect to the division of the ewe increase, and a promise on his part to correct it. The plaintiff denied ever having had such conversation. The trial court had the witnesses before it, and having found that a mistake occurred we would not feel inclined to distrust that finding. The error of the court, we think, was in holding that the contract could be reformed on account of the mistake, notwithstanding the negligence of the defendants.

The court further found that plaintiff at the expiration of two years of the contract period, without just cause and wrongfully, took possession of the sheep contrary to the provisions of the contract; that the ewe increase for the three years was 4,700 head; that the number necessary to make good the losses from the original band was 395 and that such number was to be deducted from the ewe increase, leaving the net ewe increase 4,305 head, of the value

of $2.50 per head; and that of this number the plaintiff had delivered to defendant 1,348 head. These findings are sustained by sufficient evidence. Under the written contract the defendants by the above findings were entitled to one-half of the 4,305 head, or 2,152 head, in even numbers. Of these they had received 1,348 head, leaving still due them 804 head of the value of $2,010.

For the reasons above stated the decree reforming the written contract will be vacated, and the judgment modified by reducing the number of ewes to be turned over by the plaintiff to the defendants from 2,957 to 804, and the amount of the judgment will be reduced from $7,392.50 to $2,010, and as thus modified the judgment of the District Court will be affirmed. The plaintiff in error will be allowed his costs in this court.    *Modified and as modified affirmed.*

POTTER, C. J., and SCOTT, J., concur.